Day, J.
 

 The question presented by this case is whether the notes proposed to be issued by the village of Oak Hill will increase the net indebtedness of said village to more than “five per cent, of the total value of all property in such municipal corporation as listed and assessed for taxation,” within the meaning of Section 2293-14, General Code. This depends upon whether the tax duplicate of 1931 or that prepared in 1930 is to be used as a basis for determining the allowable indebtedness. The 1930 duplicate included all property, real and personal, which was subject to taxation under the old law. The 1931 duplicate did not include any personal property except that belonging to public utilities. The first complete tax duplicate under the new law will be prepared in 1932.
 

 In 1929 and 1930 the tax list and duplicate in the village of Oak Hill contained real and personal property valued at more than a million and a half dollars. The net indebtedness of the village, including the notes proposed to be issued, will be less than five per cent, of the real and personal property so listed in the village in 1929 and 1930. It is conceded that the net indebtedness of the village, including such notes, if they are issued, will exceed five per cent, of the property listed in 1931, consisting only of real property and public utilities property valued at $861,910.
 

 
 *174
 
 In 1931 the county auditor made up no tax list , and , duplicate of personal property in the village of Oak Hill, for the reason, as alleged in the petition, “that the same is expressly prohibited by Sec. 5 of Am. S. B. No. 323, 114 O. L., page 777.” In August, 1932, certain personal property will again be listed by- the county auditor, pursuant to Section 2584, General Code (114 Ohio Laws, 723), one of the provisions, of the new tax law. Until such listing of personal property in August,- 1932, what is included within the meaning of the words “all property in such municipal corporation as . listed and assessed for taxation [Section 2293-14, General Code]?” May the five per cent, permissible indebtedness be computed with reference to the 1930 list, which, it is said, has never been superseded by a new. list, or even by the 1929 list, which was in effect when the. issue, here involved was .authorized by the voters; or is the village restricted in incurring indebtedness to the only list - prepared in 1931, embracing only real property and public, utilities property?
 

 Section 5626-2,’ General Code (114 Ohio Laws, 770), provides: “For the purposes of Sections 5625-1 to 5625-39, both inclusive, of the General Code, the. terms ‘tax list’ and ‘tax duplicate’ shall mean the general tax lists, and duplicates prescribed by Sections 2583 and 2584 of the General Code, and the term ‘property’ when predicated of a tax levy therein means taxable property listed-on such general tax lists, and duplicates. * * * Wherever in the uniform bond act or elsewhere, in the General-Code the amount of bonded indebtedness of- any subdivision is limited with reference to the aggregate value of the property- on the tax list and duplicate of such subdivision such limitations shall be measured' by the property listed on such general tax,lists and duplicates in such subdivision.”
 

 The duties of the county auditor with reference to the listing of property in the year 1931 are prescribed
 
 *175
 
 by Section 5, Am. S. B. 323, 114 Ohio Laws, 776, as follows:
 

 “The amendments, enactments and repeals of sections of tb'e General Code effected by this act shall
 
 go
 
 into effect and affect pending proceedings and causes of action and of proceeding as follows:
 

 “The listing of personal property, moneys, credits, investments in bonds, stocks, joint stock companies and otherwise shall proceed in 1931 pursuant to the law heretofore in force, notwithstanding the amendments and repeals herein made, and the powers and duties of the county auditor and the tax commission of Ohio respecting the assessment thereof, shall not be affected by any of the repeals or amendments herein made.”
 

 The meaning of this provision would be clear were we not confronted with an apparently conflicting provision later in the same section, as follows:
 

 “In making up his tax lists and duplicates in the year 1931 each county auditor shall be governed by Section 2583 of the General Code as herein amended and shall not place thereon any personal property, moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, so listed and assessed, excepting the property of public utilities subject to taxation on the general tax list and duplicate as required by said amended Section 2583; and excepting as to said public utility property the assessments of all such personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, including bank shares and capital employed in banking and moneys, credits and investments of public utilities, so made in the year 1931, are hereby cancelled and annulled * *
 

 It is difficult to reconcile these two conflicting provisions of Section 5. The auditor is first directed to proceed with the listing of personal property in 1931, pursuant to the law theretofore in force, and is then
 
 *176
 
 instructed not to place on his tax lists and duplicates any personal property in the year 1931.
 

 We would be inclined to give effect to the second provision, authorizing county auditors to omit personal property from their 1931 tax lists, not only because this provision is probably more specific and appears later in the same section, but also on the ground that the second provision is more in harmony with the legislative intent. There was no reason for requiring the listing of personal property in 1931, since such property was not subject to taxation in that year.
 

 But the county auditor did not, as a matter of fact, list personal property in the village of Oak Hill in the year 1931, and this is not an action to compel him to prepare such a list of personal property. Irrespective of whether the county auditor was or was not, under the provisions of Section 5 above quoted, under a duty to prepare personal property tax lists in the year 1931, the question remains whether, in the absence of such a list, the tax lists and duplicates of 1930 or 1929 may be referred to in computing the five per cent, allowable indebtedness for the village of Oak Hill.
 

 It is our opinion that this cannot be done. The only purpose for tax lists and duplicates is to list property in the county subject to taxation. Obviously, it is only
 
 taxable
 
 property which can form the basis for an indebtedness incurred by a municipality. The security behind a bond issue is the
 
 taxable
 
 property in the municipality, and other property is of no consequence.
 

 In 1931 the Legislature removed from the list of taxable property a large part of the tangible personal property which had theretofore been listed and taxed. It is true that the Legislature provided for taxation beginning in 1932 of certain personal or chattel property used in business, Section 5328, General Code (114 Ohio Laws, 717), but a large proportion of the tangible personal property which was listed and taxed in 1930 not only was omitted from the duplicate in 1931 but
 
 *177
 
 will not be taxable in 1932, or thereafter, under the new law.
 

 The 1930 tax list is dead, not merely because of the passage of time, but because a large part of the personal property included thereon is no longer taxable. It would be wholly impossible to determine from the 1930 duplicate' what proportion of the personal property listed thereon remains taxable under the new law, and what proportion of the property so listed might therefore be regarded as security for a municipal bond issue within the meaning of Section 2293-14, General Code.
 

 It is argued that the 1929 list is applicable in this case, since the proceeding was begun in 1929. In support of this view counsel cite
 
 State, ex rel. City of Toledo,
 
 v.
 
 Weiler,
 
 113 Ohio St., 443, 149 N. E., 326. There it was held that the amendment of 1925, reducing the allowable indebtedness of a municipal corporation, incurred without the vote of the people, from two and one-half to one per cent, of the total value of listed property, would not apply to a bond issue authorized prior to the effective date of the amendment, and a writ of mandamus was allowed to compel the issuance of the bonds after the effective date of the amendment of 1925.
 

 The amendment involved in the
 
 Weiler case, supra,
 
 made a direct change in the law governing the issuance of municipal bonds, and it was held that such amendment did not affect pending proceedings. The instant case involves a change in the law which only indirectly affects the proceedings for the issuance of these notes and their validity. The new tax law caused a shrinkage in the duplicate which constitutes the security for the obligation to be incurred by the municipality. It is the taxable property listed in the municipal corporation, at the time the indebtedness is created, that is, at the time of the delivery of the evidence of indebtedness, which is important in this connection.
 

 
 *178
 
 Section 2293-13, General Code, provides: “An indebtedness shall not be deemed to have been created or incurred until the delivery of the bonds under contract of sale.” This section is followed immediately by Section 2293-14, General Code, quoted above, limiting the net indebtedness of a municipal corporation to five per cent, of the total value of its listed property. The value of the taxable property listed in the municipality at the time the indebtedness is incurred by the delivery of the bonds or notes determines the amount of the indebtedness which may legally be incurred by the municipality.
 

 The relator’s petition discloses that the issuance and sale of notes by the village in the amount of $46,000 would be without authority of law, as exceeding the amount of indebtedness which may at this time be incurred by the village under the provisions of the General Code. The demurrer to such petition should therefore be sustained and the writ of mandamus denied.
 

 Demurrer sustained and writ denied.
 

 Marshall, C. J., Matthias, Allen, Kinkade and Stephenson, JJ., concur.
 

 Jones, J., not participating.